IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JIM S. ROBAR, Administrator of the Estate of ALAN S. ROBAR, deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06-3171 |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Deborah Fuqua and Thomas Thompson's Motion for Summary Judgment (d/e 123) (Motion).  For the reasons set forth below, the Motion is ALLOWED.

STATEMENT OF FACTS

During the entire period relevant to this lawsuit (August 24-November 28, 2004), Defendants Deborah Fuqua and Thomas Thompson were employed at the Western Illinois Correctional Center (Western). Defendants Fuqua and Thompson's Motion for Summary Judgment (d/e 123), attached Defendants' Exhibits (Defendants' Exhibit), Exhibit 1,

1

Thomas Thompson Affidavit (Thompson Affidavit), at 1; Defendants' Exhibit 1, Deborah Fuqua Affidavit (Fuqua Affidavit), at 1. Fuqua was the Health Care Unit Administrator at Western while Thompson was a correctional officer there. Fuqua Affidavit, at 1; Thompson Affidavit, at 1. At the time of the events giving rise to this suit, Fuqua was a registered nurse. Plaintiff's Fifth Amended Complaint (d/e 79) (Amended Complaint), at 8; Answer to Plaintiff's Fifth Amended Complaint (d/e 82) (Answer), at 3.

On August 24, 2004, prisoner Alan S. Robar arrived at Western. Robar suffered from severe mental illness, and on several occasions during Robar's stay at Western he consulted with various mental health professionals there. Defendants' Exhibit 4, Offender Medical History (Medical History). The mental health and medical care professionals at Western were employed by Wexford Health Sources, the vendor responsible for the provision of medical and mental health services to Western's inmates during 2004. Fuqua Affidavit, at 2. Robar saw the prison's psychiatrist, Dr. Sreehari Patibandla, on only one occasion during his time at Western: September 4, 2004. Defendants' Exhibit 2, Deposition of Sreehari Patibandla, M.D. (Patibandla Deposition), at 22. On September 18, 2004,

Dr. Patibandla told Wexford he was quitting. <u>Deposition Excerpts Cited in Plaintiff's Response to Defendants' Motions for Summary Judgment (d/e 129)(Deposition Excerpts)</u>, <u>Deposition of Sreehari Patibandla, M.D.</u>, at 48. For the remainder of Robar's time at Western, the position of prison psychiatrist went unfilled. <u>Plaintiff's Motion for Leave to File (d/e 128)</u>, Exhibit Group 4, <u>Minutes of the Continuous Quality Improvement Committee Meeting (Meeting Minutes) for December 2004</u>, at 11. While Robar was at Western, Robar's previously prescribed medications were discontinued without a physician's order or any explanation being given. <u>Medical History</u>.[1]

The shortage of psychiatric care at Western was discussed at several of the meetings of Western's Continuous Quality Improvement Committee. <u>Meeting Minutes for December 2004</u>, at 11; <u>Meeting Minutes for October 2004</u>, at 11; <u>Meeting Minutes for August 2004</u>, at 14. While Fuqua was a member of this Committee, and signed as having read the minutes of the meetings where the prison's difficulties in providing the desired level of

---

[1] Fuqua and Thompson dispute this fact. <u>Defendants Fuqua and Thompson's Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (d/e 127)</u>, at 6. Because this is a Motion for Summary Judgment by the Defendants, the Court must consider the evidence presented in the light most favorable to the Plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

psychiatric care to inmates were discussed, she was without power to resolve this situation as she lacked the authority to hire psychiatric staff or to determine their hours.  <u>Deposition Excerpts</u>, <u>Deposition of Jennifer Blaesing</u>, at 17-18; <u>Meeting Minutes for December 2004</u> at 14; <u>Meeting Minutes for October 2004</u>, at 14; <u>Meeting Minutes for August 2004</u>, at 16; <u>Fuqua Affidavit</u>, at 3.  Fuqua was not specifically aware of Robar or of his mental health difficulties.  <u>Id.</u>

 During Robar's time at Western, his mental health deteriorated and he became delusional and agitated.  On November 28, 2004, correctional officer Thompson was informed that the emergency call button in Robar's cell had been pushed.  <u>Thompson Affidavit</u>, at 2.  He arrived at the cell approximately 30 seconds later and was the first on the scene.  <u>Id.</u>  Upon arriving at the cell, Thompson was told by Robar's cellmate, Jones, that there was something wrong with Robar.  <u>Id.</u>, at 3.  Thompson then called a Code 3 (medical emergency) as he had been trained to do.  <u>Id.</u>, at 2, 4.  After Thompson called the Code 3, Robar informed Thompson that he had cut himself and Thompson saw a large amount of blood on Robar's bedding.  <u>Id.</u>, at 2, 3.  Later that day, Robar died from his self-inflicted wounds.  <u>Amended Complaint</u>, at 4; <u>Answer</u>, at 2.

## ANALYSIS

The Plaintiff brings four claims against Defendants Thompson and Fuqua. The Plaintiff claims in Count III that various health care personnel working at Western, including Fuqua, violated Robar's constitutional rights under the Eighth and Fourteenth Amendments by deliberately failing to provide Robar with mental health care adequate to prevent Robar's death by suicide. Amended Complaint, at 7-11. Count IV is an Illinois Wrongful Death Act claim against these same medical personnel, based on the theory that their alleged failure to provide Robar with adequate mental health care caused his death by suicide. Id., at 11-15. The Plaintiff claims in Count V that Thompson was aware that Robar was suicidal, and that he failed to act on this information in violation of Robar's constitutional rights. Id., at 15-16. Finally, Count VI is an Illinois Wrongful Death Act claim, based on the theory that Thompson's failure to act on his alleged knowledge of Robar's suicidal state caused Robar's death by suicide. Id., at 16-18.

The Plaintiff has stipulated to the dismissal of Thompson as a Defendant. Response to Defendants Fuqua and Thompson's Motions for Summary Judgment (d/e 126)(Response), at 2. Accordingly, all claims against Thompson are now dismissed.

Fuqua now seeks summary judgment on the claims against her. At summary judgment, Fuqua must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to the Plaintiff. Any doubt as to the existence of a genuine issue for trial must be resolved against Fuqua. Liberty Lobby, 477 U.S. at 255. Once Fuqua has met her burden, the Plaintiff must present evidence to show that issues of fact remain with respect to an issue essential to his case and on which he will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court will first address the constitutional claim against Fuqua and will then consider the state law claim against her.

I.    THE CONSTITUTIONAL CLAIM

Fuqua's Motion for Summary Judgment is granted because the Plaintiff cannot show that Fuqua was personally responsible for the alleged deprivation of Robar's Eighth Amendment rights.

The Plaintiff brings his constitutional claim against Fuqua under 42 U.S.C. § 1983. Amended Complaint, at 11. Section 1983 provides for a

private cause of action against any person who, acting under color of state law, violates the constitutional rights of another. 42 U.S.C. § 1983 (2009). The cause of action created by § 1983 is different from many tort causes of action in that § 1983 does not allow an action to lie against a supervisor based solely upon a theory of *respondeat superior*. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir., 1983). Instead, in order to prove a § 1983 claim against a supervisor, like Fuqua, the Plaintiff must show that the supervisor was directly, personally responsible for the alleged deprivation of constitutional rights. Id.

The Plaintiff's constitutional claim against Fuqua is based on two allegations. Response, at 5-6, 7. The first allegation is that Fuqua violated Robar's Eighth Amendment rights by failing to ensure that Robar was continued on the psychiatric medications he had been prescribed prior to his arrival at Western. Id., at 5-6. In order to state a § 1983 claim against Fuqua for this alleged discontinuation of Robar's medication, the Plaintiff must show that Fuqua was personally responsible for this discontinuation. Wolf-Lillie, 699 F.2d at 869. Fuqua provided evidence that she did not have the power to prescribe medication, change medication, or discontinue medication. Fuqua Affidavit, at 1-2. The Plaintiff admitted that Fuqua

7

lacked power to prescribe, change, or discontinue medication in his Response. Response, at 2. Because Fuqua lacked the power to discontinue medication, as the Plaintiff admits, she was not personally responsible for the alleged discontinuation of Robar's medication, and no § 1983 claim can be stated against Fuqua for the alleged discontinuation of Robar's medication. Id.; Wolf-Lillie, 699 F.2d at 869.

The second allegation on which the Plaintiff bases his constitutional claim against Fuqua is that Fuqua violated Robar's Eighth Amendment rights by failing to ensure that Western's Health Care Unit had enough psychiatric staff to provide adequate psychiatric care for Robar and other inmates after Dr. Patibandla's departure. Response, at 7. The Plaintiff cannot state a § 1983 claim against Fuqua for this alleged failure to staff the Health Care Unit adequately, unless he can show that Fuqua was personally responsible for the alleged failure to provide adequate psychiatric staff. Wolf-Lillie, 699 F.2d at 869. With the Motion for Summary Judgment, Fuqua provided evidence indicating that she did not have the power to hire psychiatrists or to determine their hours. Fuqua Affidavit, at 3. If Fuqua did not have the power to hire psychiatrists or to determine their hours, then she was not personally responsible for the alleged failure to provide

8

adequate psychiatric staff at Western, and the Plaintiff's § 1983 claim against Fuqua fails as a matter of law. Wolf-Lillie, 699 F.2d at 869. Thus, by presenting this Affidavit, Fuqua showed the absence of a genuine issue of material fact with regard to her lack of hiring power, and satisfied her burden on the summary judgment motion. Celotex Corp., 477 U.S. at 323-4.

Since Fuqua has satisfied her burden on the summary judgment motion, the Plaintiff must now present evidence to show that issues of fact remain with respect to the matter of Fuqua's power, or lack thereof, to hire psychiatric staff. Id., at 322; Matsushita Elec., 475 U.S. at 586. The Plaintiff has failed to do so. In his Response to the Motion for Summary Judgment the Plaintiff disputes Fuqua's argument that she could not have hired psychiatric staff, asserting that Fuqua could have solved the staffing problem by either hiring a psychiatrist directly through the state's normal hiring practices or asking Wexford to hire a psychiatrist for Western. Response, at 3. The Plaintiff does not provide any evidence to support either of these assertions. Id. Because the Plaintiff has failed to provide any evidence to show that an issue of fact remains with respect to either of the allegations on which the constitutional claim against Fuqua is based, Fuqua

is entitled to summary judgment on this claim. Fed. R. Civ. P. 56(b).

II.   THE STATE LAW CLAIM

Fuqua is entitled to summary judgment on the state law claim against her because this claim is barred by sovereign immunity.

The Illinois Court of Claims Act provides that claims brought under Illinois state law against the State may be brought only in the Court of Claims. 705 Ill. Comp. Stat. Ann. 505/8 (West 2008). The Court of Claims' exclusive jurisdiction over such actions cannot be avoided by making an action nominally one against an employee of the State when the real claim is against the State itself. Sass v. Kramer, 72 Ill.2d 485, 491 (1978). The Court of Claims Act will operate to divest this Court of subject matter jurisdiction over an Illinois state law claim against an employee of the State of Illinois so long as the following three criteria are satisfied: (1) there are no allegations that the employee acted beyond the scope of her authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State. Healy v. Vaupel, 133 Ill.2d 295, 309 (1990) *quoting* Robb v. Sutton, 147 Ill.App.3d

710, 716 (1986). Where these criteria are satisfied, the action is one against the state and must be brought in the Court of Claims. Healy, 133 Ill.2d at 309.

All three criteria are satisfied here. The first and third criteria are clearly satisfied with respect to the state law claim against Fuqua. The Plaintiff does not allege that Fuqua acted beyond the scope of her authority as Health Care Unit Administrator or that her actions involved matters outside her normal and official functions as Health Care Unit Administrator; instead, the Plaintiff merely alleges that Fuqua failed to ensure that Western's inmates received the necessary medical and mental health care and, thus, that she did her duties as Health Care Unit Administrator very poorly. Amended Complaint, at 13-14. As such, the first and third of the Healy criteria are satisfied.

The second Healy criterion is also satisfied in Fuqua's case. Sovereign immunity will only operate to bar an action against an employee of the State of Illinois where the duty that is alleged to have been violated by that employee arises solely from her employment with the State. Currie v. Lao, 148 Ill.2d 151, 160 (1992). The analysis of this criterion with respect to the state law claim against Fuqua is complicated by the fact that Fuqua is

11

a registered nurse. Illinois courts have held on multiple occasions that sovereign immunity will not operate to bar a state law action by a former patient against a health care provider employed by the State of Illinois, because that health care provider owes a duty to her patients that is independent of her employment with the State. *See* Jinkins v. Lee, 337 Ill.App.3d 403 (2003); Madden v. Kuehn, 56 Ill.App.3d 997, 1001 (1978); Watson v. St. Annes Hospital, 68 Ill.App.3d 1048, 1053 (1979); Kiersch v. Ogena, 230 Ill.App.3d 57, 63 (1992); Cottrill v. Russell, 253 Ill.App.3d 934, 943 (1993); Janes v. Albergo, 254 Ill.App.3d 951, 964 (1993).

These cases are, however, distinguishable from Fuqua's situation in that all of these cases involve health care providers being sued by their patients. Jinkins, 337 Ill.App.3d at 413. Here, while Fuqua was a registered nurse, Robar was never her patient; indeed, Fuqua was not even aware of Robar's existence. Fuqua Affidavit, at 3. Because Robar was never Fuqua's patient, Fuqua cannot have owed any nurse/patient duty to Robar. Instead, any duties Fuqua may have owed to Robar would have arisen solely from Fuqua's employment by the State of Illinois as Health Care Unit Administrator at Western. Because any duties Fuqua may have owed to Robar would have arisen solely by virtue of her employment by the State of

Illinois, the second <u>Healy</u> criterion is satisfied with respect to the state law claim against Fuqua. Because all three <u>Healy</u> criteria are satisfied in this case, the state law claim against Fuqua is, in reality, a claim against the State of Illinois and, thus, may not be brought in this Court.

THEREFORE, Defendants Deborah Fuqua and Thomas Thompson's Motion for Summary Judgment (d/e 123) is ALLOWED. Summary Judgment is entered in favor of Deborah Fuqua and Thomas Thompson and against Jim S. Robar, Administrator of the Estate of Alan S. Robar, deceased. Defendants Fuqua and Thompson are dismissed as Defendants in this case.

IT IS THEREFORE SO ORDERED.

ENTER: July 8, 2009

    FOR THE COURT:

                                s/ Jeanne E. Scott
                                JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE